UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BETTY DENISE RIDDLE,

               Plaintiff,

v.                          Case No. 8:08-cv-86-T-17MSS

SECRETARY, DEPT. OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,
FNU KAUFFMAN, FNU NETTNIN, FNU OBI,
FNU SIMMON,

               Defendants.

_____

O R D E R

      Pro se Plaintiff Betty Denise Riddle filed a 42 U.S.C. § 1983 civil rights complaint

alleging that she was denied proper medical care for the treatment of her trigger finger.

Riddle alleges that Defendants violated her Eighth Amendment Constitutional right by

being deliberately indifferent to her serious medical needs.  Defendants have filed motions

to dismiss the complaint (Doc. Nos. 13, 16) and Riddle has filed a response in opposition

to the motions to dismiss. (Doc. Nos. 16, 17).

Plaintiff's Allegations

On March 28, 2007, while housed at Hillsborough Correctional Facility, I had
surgery on my left hand, middle finger by a plastic surgeon at Lake Butler
Medical Facility by the name of Dr. Obi.  On April 11, 2007, I had a follow-up
appointment with Dr. Obi (surgeon) at Lake Butler.  I was escorted by C.O.
Nettnin and C.O. Kauffman. Upon seeing Dr. Obi, he demonstrated to me a
"Range of Motion" practice.  I was to continue this practice on my own until
I was able to make a fist.  While sitting in the waiting room waiting to be
transported back to Hillsborough Correctional, I started to practice the
"Range of Motion" technique Dr. Obi showed me.  Once I reached my middle
finger, the finger the surgery was done on) to "Range of Motion" it, it locked
up.

1. Correctional Officer Nettnin

On April 14, 2007, between 9:15 - 11:05 a.m. at Lake Butler, while sitting in the waiting room with C.O. Nettnin doing "Range of Motion" on my finger as told by Dr. Obi, the finger I had the surgery on locked-up.  I notified C.O. Nettnin immediately because I knew something was wrong. C.O. Nettnin stated to me, "I'm not going to bother the Doctor. He has other inmates to see.  For two hours I earnestly asked C.O. Nettnin to notify the doctor or nurse of my condition and he refused.

2. Correctional Officer Kauffman

On April 14, 2007, at approximately 11:00 a.m. while I sat in the waiting room at the Lake Butler Medical Facility, C.O. Kauffman walked in.  I got her attention and attempted to explain my situation to her.  She walked away and briefly spoke with C.O. Nettnin.  They then proceeded to pick up my file and the other inmate files and we were escorted back to the van and drove back to Hillsborough Correctional Facility.  C.O. Kauffman also failed to notify the doctor or nurse of my condition.

3. Dr. Simmon

On April 14, 2007, time unknown, we returned to Hillsborough Correctional Facility. I spoke with the nurse on duty.  I explained to her my condition.  She scheduled me to see (Dr. Simmon) physician at Hillsborough Correctional Facility.  He in return schedule me an appointment to see the surgeon (Dr. Obi) at Lake Butler Medical Facility.

4. Dr. Obi

On May 9, 2007, (20 days later), I returned to see Dr. Obi, by this time my finger had bented [sic] to a 90% [sic] angle and disfigured.  The surgeon didn't understand why they had waited so long to report my condition.  Dr. Obi (surgeon) was never told of my condition by neither C.O. Kauffman or his nurse. He shot my finger with steroids hoping it would help, and rescheduled me to return in 2 weeks.  I returned on May 23, 2007.  My finger was in the same condition.  He (Dr. Obi) gave me some ointment to apply to my finger. I spoke with him concerning my grievance and he stated he was not aware of my condition at any time during April 14, 2007 after our range of motion session.  He became very upset and that was the last time I spoke or saw Dr. Obi concerning my finger.

5. Gadsen Correctional Facility

On July 27, 2007, I returned to Gadsden Correctional Facility.  I spoke with

the physician (Dr. Smith) and he scheduled me an appointment to see an orthopedic doctor at Tallahassee Hospital.  I saw a Dr. (name unknown) on December 10, 2007.  All he stated was that "I wasn't there every time I asked about finger."

Riddle seeks damages and to have the Court "to find a physician who specializes in hands to evaluate and explain to me the nature of my injury."   Riddle is no longer incarcerated.

## Standard for Motion To Dismiss

"It is well settled that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [her] to relief." *Banco Latino v. Gomez Lopez*, 17 F.Supp.2d 1327, 1331 (S.D. Fla. 1998)(citing *Conley v. Gibson*, 355 U.S. 41 (1957)). Generally on a motion to dismiss, the Court must accept as true the complaint"s well-pleaded facts. *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Com'n.*, 226 F.3d 1226, 1234 (11th Cir. 2000) ("We accept as true the complaint"s well-pleaded facts, even if disputed.") However, conclusory allegations will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief. *Municipal Utilities Bd. of Albertville v. Alabama Power Co.*, 934 F.2d 1493, 1501 (11th Cir. 1991). Although this Court must take all the factual allegations in the Complaint as true, this Court is not bound to accept as true a legal conclusion couched as a factual allegation. *See, e.g., Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir. 1992); nor is the court permitted to read into the Complaint facts that are not there. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Because Riddle can prove no set of facts that would entitle her to relief, the Defendants' motions to dismiss will be granted.

Defendants, State of Florida, Department of Corrections, FNU Kauffman, FNU Nettnin and

3

<u>Dr. Reginald Simmons' Motion To Dismiss</u>

Riddle brought this action under 42 U.S.C. 1983. "In order to prevail on a civil rights action under §1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Moreover, "bare allegations of malice should not suffice to subject public officials to broad-reaching discovery." *Wyatt v. Cole*, 504 U.S. 158, 165-66 (1992). From what can be discerned from the Complaint, Riddle's claim is that Defendants violated a constitutionally-protected right by not getting her in to see Dr. Obi immediately upon her request.

Plaintiff attempts to state a §1983 claim against Defendant State of Florida and Defendant Department of Corrections (DOC) and seeks monetary damages against Defendant State of Florida and Defendant DOC for an alleged violation of her Constitutional Rights.  However, Defendants' State and the DOC are not persons under 42 U.S.C. §1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

"[D]eliberate indifference to a prisoner"s serious illness or injury states a cause of action under §1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To succeed on a claim of deliberate indifference to a serious medical need, "a plaintiff must set forth evidence of an objectively serious medical need" and "prove that the prison official acted with an attitude of "deliberate indifference" to a serious medical need." *Farrow v. West*, 320 F.3d 1235,1243 (11th Cir. 2003)(internal citations omitted). "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor"s attention." *Id.* (citations and internal quotations omitted).

4

In the instant case, Riddle has failed to allege evidence of an objectively serious medical need or proof that any prison official acted with an attitude of "deliberate indifference."  Riddle's complaint indicates that she saw Defendant, Dr. Simmons, late on April 14, 2007 (Doc. No. 1, p.7a,¶ 3) and Dr. Simmons' response was to schedule an appointment with Defendant, Dr. Obi at a later date. (Doc. No. 1, p.7,¶3). **Riddle's allegations indicate that another medical professional, Dr. Simmons, did not think immediate attention was necessary.** Upon seeing Dr. Obi at a later date, Dr. Obi's subsequent medical responses were a steroid injection and an application of an ointment to the finger. (Doc. No. 1, p.7a,¶4) .

Riddle's allegations fail to rise to the definition of an objectively serious medical condition. Riddle further fails to allege deliberate indifference on the part of any of these defendants. Thus, the Complaint lacks the requisite specificity for a §1983 claim.

Eleventh Amendment immunity

To the extent that Riddle has brought suit against Defendants employed by the Department of Corrections, in their official capacity, this case must be dismissed. State public officials sued in their official capacities are entitled to Eleventh Amendment immunity. *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989). Further, the Eleventh Amendment operates as a bar to lawsuits against state officials in their official capacity seeking injunctive and other equitable relief, as well as, money damages brought in federal courts. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984); and *Miccosukee Tribe of Indians of Florida v. U.S.*, 980 F.Supp. 448, 459 (S.D. Fla. 1997). Eleventh Amendment immunity confers immunity from suit, not just from liability.

Absent its consent, a state may not be sued in federal court unless Congress has clearly and unequivocally abrogated the state's Eleventh Amendment immunity by exercising its power with respect to rights protected by the Fourteenth Amendment. *DeKalb County School District v. Schrenko*, 109 F.3d 68, 688 (11th Cir. 1997)(citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, (1989). "As such, it is not different from a suit against the State itself." *Id.*

In the instant case, Riddle cannot demonstrate any waiver by Congress or the State of Florida of its Eleventh Amendment immunity, to the extent that the Defendant is sued pursuant to 42 U.S.C. §1983. *Gamble v. Florida Department of Health and Rehabilitative Services*, 779 F.2d 1509 (11th Cir. 1986); and *Hill v. Department of Corrections*, 513 So.2d 129 (Fla. 1987). Accordingly, official capacity claims, and any claim against Defendant brought pursuant to §1983 is barred by Eleventh Amendment immunity.

Further, Section 768.28(9)(a), Florida Statutes, provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Here, Riddle has filed a civil rights complaint, but she couched it in nebulous terms of tort law. As Riddle has not alleged bad faith or malice on the part of the Defendants, these allegations fail as a matter of law and cannot invade the individual qualified immunity available to these individual Defendants. To the extent that Eleventh Amendment immunity

6

may somehow be lost, dismissal is also proper based on qualified immunity.

Qualified immunity shields governmental officials performing discretionary functions from civil trial (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991) ("we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage of litigation") (citations omitted). The qualified immunity doctrine does not require government agents to err on the side of caution. *Davis v. Scherer*, 468 U.S. 183, 196 (1984).

Qualified immunity[1] protects government actors; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. *Harlow*, 457 U.S. at 818 ("officials generally are shielded from liability for civil damages"); *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir.), *cert. denied*, 493 U.S. 831 (1989); *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323-24 (11th Cir. 1989). Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the governmental actor has immunity from suit. *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986). The doctrine "balances society's interests in providing a remedy for injured victims and discouraging unlawful conduct with that of enabling public officials to act independently and without fear of consequences." *Hardin v. Hayes*, 957 F.2d 845,

---

[1] Further in-depth discussion of this Circuit"s interpretation and application of qualified immunity may be found in *McCoy v. Webster*, 47 F.3d 404, 406 (11th Cir. 1995); *Lassiter v. Alabama A & M University*, 28 F.3d 1146 (11th Cir. 1994); *Sammons v. Taylor*, 967 F.2d 1533, 1539 (11th Cir. 1992); and *Stough v. Gallagher*, 967 F.2d 1523 (11th Cir. 1992).

848 n.7 (11th Cir. 1992).

In *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983), the Eleventh Circuit Court of Appeals established a two step analysis to be used in applying the *Harlow* qualified immunity test. First, "the Defendant must prove that 'he was within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " "[T]hen, the burden shifts to the Plaintiff to show lack of good faith on the Defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law.' " *Id.*; *see McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995). Mere assertions that the Defendants violated clearly established constitutional laws will not suffice. "[Q]ualified immunity protects government officials performing discretionary functions from the burdens of civil trials and from liability." *Flores v. Satz*, 137 F.3d 1275, 1277 (11th Cir. 1998)(citing *McMillian v. Johnson*, 88 F.3d 1554, 1562; amended on other grounds, 101 F.3d 1363 (11th Cir. 1996)). "Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established." *Id.*(citing *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996)) [citations omitted]. "This burden is not easily discharged: 'That qualified immunity protects government actors is the rule; only in exceptional cases will government actors have no shield against claims against them in their individual capacities.' " *Id.* "Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms." *Id.* "Instead, for qualified immunity to be denied, 'pre-existing law must dictate, that is, truly compel...the conclusion for every like-situated, reasonable government agent that what a defendant is doing violates federal law in the circumstances.' " *Id.*(citing *McMillian*, 88 F.3d at 1562) [citations omitted].

8

In *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994), the Eleventh Circuit Court of Appeals interpreted the term "discretionary authority" to include actions that do not necessarily involve an element of choice. In order to show that he acted within the scope of discretionary authority, a defendant "must demonstrate objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981); *accord Jordan*, 38 F.3d at 1566; *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).

In the instant case, Defendants need only point to the Complaint itself to show that Defendants were acting within the scope of their employment. Riddle acknowledges that Defendants, Nettnin, Kauffman, and Dr. Simmons were employed by Hillsborough Correctional Facility. (Doc. No. 1, p. 2). Riddle does not allege that any actions by the Defendants were beyond their role as employees. All actions/omissions obviously stem from actions within the scope of their authority. Therefore, Defendants have met their burden under the *Zeigler* test.

Once Defendants have established that they were acting within the scope of their discretionary authority, the burden shifts to the plaintiff to demonstrate that a reasonable official would have known that his conduct violated a clearly established constitutional right. *Zeigler*, 716 F.2d at 849. For the law to be clearly established to the point that qualified immunity does not apply, the law must have been developed in such a concrete and factually defined context to make it obvious to all governmental actors in Defendants' place that their actions violate federal law. *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir. 1994); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "If case law, in

factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (emphasis added), *modified*, 14 F.3d 583 (11th Cir. 1994); *accord Kelly v. Curtis*, 21 F.3d 1544, 1544 (11th Cir. 1994). Plaintiffs may not rely on "general, conclusory allegations of some constitutional violation, [n]or [may they rely on] broad legal truisms." *Barts,* 865 F.2d at 1190.

Riddle has failed to demonstrate that Defendants State of Florida, Department of Corrections, FNU Kauffman,[2] FNU Nettnin, and Dr. Reginald Simmons have violated her constitutional rights, and the Defendants' motion to dismiss the complaint will be granted.

Riddle's arguments in her reply to the motions to dismiss are not persuasive.  She attempts to raise new claims against Dr. Obi stating that he neglected to finish his written orders on Plaintiff's treatment plan/medical file.  This omission does not rise to the level of a constitutional violation, as negligence is not actionable under 42 U.S.C. § 1983. Negligent acts are insufficient as a basis for liability under section 1983. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Bailey v. Board of County Commissioners*, 956 F.2d 1112, 1121 n.8 (11th Cir.), *cert. denied*, 113 S.Ct. 98 (1992).

She also claims that Defendants lied on the grievance responses, but has not provided any factual basis to prove this allegation, and has not shown that they had any

---

[2]  The May 11, 2007 response to Riddle's May 9, 2007 grievance states:

Officer Kaufman did report your complaint to the nurse.  The nurse advised Officer Kauffman the doctor could not see you at that time and would have to reschedule you.

This grievance response was written long before this lawsuit was filed.  Defendants had no reason to misrepresent the facts in the grievance response.

reason to lie.

Riddle has not shown that Defendants' actions rose to the level of deliberate indifference to a serious medical need. Both the complaint and the response to her grievances demonstrate that Riddle received medical care. She received surgery, steroid shots, an exercise regiment, and ointment for her finger. She was transported back and forth to Lake Butler Medical Center to see Dr. Obi, a plastic surgeon.

The standard for prisoner claims of medical mistreatment is well-established: a prisoner must allege and show that officials acted with deliberate indifference to serious medical needs; only indifference to medical needs offends "evolving standards of decency" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir.1995). Riddle has not met this standard. Finally, the Court cannot act to find a doctor for Riddle.

Accordingly, the Court orders:

That Defendants' motions to dismiss (Doc. Nos. 13, 16) are granted. The Clerk is directed to enter judgment against Riddle and to close this case.

ORDERED at Tampa, Florida, on October 27, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Betty Denise Riddle